IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02280-CMA-MEH

GREGORY L. MAKOWSKI,

      Plaintiff,

v.

FIRST NATIONAL OF NEBRASKA, INC., a Nebraska, foreign corporation,
DANIEL K. O'NIEL, and
DOES 1-10, inclusive,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is a Motion to Dismiss filed by Defendants First National of Nebraska, Inc. and Daniel K. O'Neill[1] [filed October 16, 2012; docket #10], which has been converted in part to a Motion for Summary Judgment in accordance with Fed. R. Civ. P. 12(d) [docket #20]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #11]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. Based on the record contained herein, the Court RECOMMENDS that Defendant's motion be **granted in part and denied in part**.[2]

---

[1]According to Defendants, "O'Neill" is the correct spelling for Defendant Daniel O'Neill.

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar

## BACKGROUND

### I.      Procedural History

Plaintiff, proceeding *pro se*, initiated this action against the Defendants on August 27, 2012.

*See* Complaint, docket #1.  Plaintiff brings claims pursuant to the Fair Debt Collection Practices Act

("FDCPA"), the Colorado Fair Debt Collection Practices Act ("CFDCPA"), "Respondeat Superior"

(which the Court construes as a claim for negligent failure to train or supervise), the Telephone

Communications Protection Act ("TCPA") and for invasion of privacy.  Defendants responded to

Plaintiff's Complaint by filing the present motion to dismiss arguing that the pleading violates Fed.

R. Civ. P. 8 by containing legal conclusions and bare allegations that fail to notify each party of the

claims against them.  Specifically, Defendants contend that Plaintiff fails to state a claim under the

FDCPA because the Complaint merely asserts that Plaintiff is a consumer and Defendants are debt

collectors, and fails entirely to describe the nature of the debt.  Likewise, Defendants contend that

Plaintiff fails to state facts, as opposed to legal conclusions, supporting claims for violations of the

CFDCPA and TCPA, as well as for negligence and invasion of privacy.

Plaintiff responds with an "affidavit of facts" in which he asserts that, in the spring 2012, he

received telephone calls from entities representing First Bank of Omaha/Nebraska and/or First

National Bank of Omaha on both his personal home phone and his cellular phone on the same days.

Plaintiff supports his "affidavit of facts" with a "verification" executed by the Plaintiff on December

---

the party from a <u>de</u> <u>novo</u> determination by the District Judge of the proposed findings and
recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1).  Additionally, the failure to file written objections to the proposed findings and
recommendations within fourteen (14) days after being served with a copy may bar the
aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or
adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United
States*, 950 F.2d 656, 659 (10th Cir. 1991).

11, 2012.  Further, Plaintiff quotes several allegations from his Complaint arguing that they show a right to relief that is more than mere speculation.

Defendants reply that Plaintiff fails, in his response, to refute Defendants' arguments in support of dismissing Plaintiff's claims pursuant to Rule 12(b)(6).  Further, Defendants ask the Court to take judicial notice of the fact that Plaintiff stated during the December 7, 2012 Scheduling Conference that the debt concerned "a couple of business credit cards."  In support of this argument, Defendants attached a copy of the transcript from the Scheduling Conference.  Accordingly, the Court converted the present motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), and ordered that the parties file supplemental briefs on or before January 30, 2013.

Only the Defendants responded to the Court's order by filing a "Brief in Support of Motion for Summary Judgment" on January 30, 2013.  Defendants argue that the evidence demonstrates the FDCPA does not apply in this case because the debt concerns a business transaction, rather than one "for personal, family or household purposes."  Further, Defendants claim the evidence demonstrates they are not "debt collectors" as necessary to bring an FDCPA claim.  Finally, Defendants repeat their arguments that Plaintiff fails to state plausible facts supporting his TCPA and invasion of privacy claims.

The Court agrees with Defendants that Plaintiff's FDCPA and CFDCPA claims are brought under parallel provisions of the statutes; therefore, the claims will be analyzed together.  Here, the only issue for which the Court considers evidence outside of the pleadings is the Defendants' challenge concerning Plaintiff's claims under the FDCPA and CFDCPA.  Therefore, the Court will begin its analysis pursuant to Fed. R. Civ. P. 56 of the FDCPA and CFDCPA claims.  The Court will then proceed to analyze Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.      Statement of Facts (Rule 12(b)(6))

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint and Jury Demand, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Plaintiff incurred a debt to a creditor, which arose from services provided by the creditor.  The debt was purchased by or assigned to Defendant First National of Nebraska ("First National"), or First National was employed by the creditor to collect the debt.  In the year prior to filing this action, First National or its employees or agents made telephone calls to the Plaintiff in an attempt to collect the debt.  During the telephone calls, Defendants represented to the Plaintiff that the debt will be reported to the credit bureau reports until paid in full, and that Plaintiff had to pay the debt to get it off of the credit bureau reports.  Defendants recorded the telephone calls and possess copies of the recordings.  Defendants did not disclose their identities when making the telephone calls. Plaintiff has received no written correspondence from Defendants.

## III.     Findings of Fact (Rule 56)

The Court makes the following findings of fact concerning the FDCPA and CFDCPA claims viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.      Scot Mayo has been employed as a Recovery Manager for First National Bank of Omaha since 2000.  Affidavit of Scot Mayo, January 30, 2013 ("Mayo Affidavit"), ¶ 2, docket #21-1.

2.      First National Bank of Omaha, whose principal business is banking, has been in business since 1857.  *Id.* at ¶ 3.

3.      First National Bank of Omaha is a subsidiary of Defendant First National of Nebraska, Inc.,

4

and First Bankcard is a division of First National Bank of Omaha.  *Id.*, ¶ 4.

4.      Defendant First National of Nebraska, Inc., First National Bank of Omaha, and First Bankcard are related by common ownership or affiliated by common corporate control.  *Id.*, ¶ 5.

5.      Defendant Daniel K. O'Neill is the President of First National Bank of Omaha, and has been employed by the bank since 1984.  *Id.*, ¶ 16.  In his capacity, he has no personal involvement in the collection of any of the credit card accounts.  *Id.*

6.      First Bankcard issues credit cards as one of its services.  *Id.*, ¶ 4.

7.      On October 24, 2007, Plaintiff Gregory Makowski applied for a Business Edition Plus Visa credit card on behalf of his company, Paul Davis Restoration/Denver West LLC (referred to as "Company").  Application, docket #21-2.

8.      In completing the application, Plaintiff acknowledged and agreed that "all charges to Company's account(s) shall be made solely for business or commercial purposes and not for personal, family or household purposes."  *Id.*

9.      In completing the application, Plaintiff acknowledged and agreed that "Company and the Authorized Company Representative shall be jointly and severally liable for repayment of all accounts due on all of Company's accounts opened in response to this application or subsequently on behalf of Company."  *Id.*

10.     Credit cards on three separate accounts were issued to the Company.  Statements, dockets #21-3, #21-4, and #21-5.

11.     A statement issued by First National Bank Omaha to Denver West, Gregory Makowski for a Visa account ending in the number 1479 reflects an outstanding balance of $19,060.18 with a payment due date of July 8, 2012.  Statement, docket #21-3.

12.     A statement issued by First National Bank Omaha to Denver West, Ronald Carr for a Visa account ending in the number 5384 reflects an outstanding balance of $2,257.40 with a payment due date of October 8, 2012.  Statement, docket #21-4.

13.     A statement issued by First National Bank Omaha to Denver West, Caryl Makowski for a Visa account ending in the number 4895 reflects an outstanding balance of $1,725.61 with a payment due date of July 8, 2012.  Statement, docket #21-5.

14.     On July 2, 2012, Plaintiff issued a check to First National Bank in the amount of $19,060.18. Docket #21-6.  In the memo section is the statement "for discharge of debt," and an account number ending in 1479 is handwritten at the top of the check.  *Id.*  A typed note in all capital letters at the top of the check states, "CLOSED ACCOUNT," and a typed note on the left side of the check states, "Return Reason - D Closed Account."  *Id.*

15.     On July 2, 2012, Plaintiff issued a check to First National Bank in the amount of $1,725.61. Docket #21-7.  In the memo section is the statement "for discharge of debt," and an account number ending in 4895 is handwritten at the top of the check.  *Id.*  A typed note in all capital letters at the top of the check states, "CLOSED ACCOUNT," and a typed note on the left side of the check states, "Return Reason - D Closed Account."  *Id.*

16.     On July 2, 2012, Plaintiff issued a check to First National Bank in the amount of $1,978.47. Docket #21-8.  In the memo section is the statement "for discharge of debt," and an account number ending in 5384 is handwritten at the top of the check.  *Id.*  A typed note in all capital letters at the top of the check states, "CLOSED ACCOUNT," and a typed note on the left side of the check states, "Return Reason - D Closed Account."  *Id.*

17.     On July 6, 2012, First National Bank of Omaha posted the payments and credited each

account for the payments received. Mayo Affidavit, ¶ 13, docket #21-1.

18.     On July 11, 2012, each of the checks were returned because they were drawn on a closed

checking account. *Id.*, ¶ 14. As a result, the credit for each account was reversed. *Id.*

19.     Because the Company was in default for payments owed on all three accounts and because

Plaintiff was jointly and severally liable for such payments, representatives of First National Bank

of Omaha contacted Plaintiff by telephone to collect the balance due. *Id.*, ¶ 15.

20.     First National Bank of Omaha only collects debts for persons to whom it is related or

affiliated and does not collect debts for any third party. *Id.*, ¶ 17.

21.     During a Scheduling Conference before this Court on December 7, 2012, the following

exchange took place between the Plaintiff and the Court:

| | |
|---|---|
| Court: | Tell me, Mr. Makowski, if you wouldn't mind, just describing what happened here. |
| Makowski: | Well, the -- the defendants were continually calling me about a debt that I owed. |
| Court: | Which debt was this? |
| Makowski: | A couple of business credit cards, Your Honor. |

Transcript of Scheduling Conference, December 7, 2012, 5:21-25; 6:1-2, docket #19.

## LEGAL STANDARDS

### I.     Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less

stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations

and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite

the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.    Dismissal under Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be

8

determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).  "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).  "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## III.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility, in the

9

context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 678-79. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 679. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

### I.     Federal and Colorado Debt Collection Practices Act (FDCPA and CFDCPA)

In Claims One and Two, Plaintiff alleges the Defendants are "debt collectors" or "collection agencies" who engaged in abusive tactics while attempting to collect a debt in violation of the

FDCPA and CFDCPA.  Further, Plaintiff alleges the challenged debt "arose from services provided by the Creditor which were primarily for family, personal or household purposes."  Complaint, ¶ 9, docket #1.

The FDCPA applies only to "debt collectors."  *Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210, 1231 (D. Colo. 2011) (citing 15 U.S.C. § 1692(a)(6)).  However, the statute specifically excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt ... which was not in default at the time it was obtained by such person...." *Id.* (citing § 1692(a)(6)(F)).  Courts have consistently ruled that a creditor, mortgage servicing company, or assignee of the debt is not a "debt collector" under the FDCPA if the entity acquired the loan before it was in default.  *Id.* (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector [under section 1692a(6)] does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned")); *Lyons v. WM Specialty Mortg. LLC,* No. 08-cv-00018-WYD-BNB, 2008 WL 2811810, at *7 (D. Colo. July 18, 2008) (granting summary judgment in favor of defendants on FDCPA claim because the loan was not in default when defendants, a creditor and mortgage servicing company, obtained the loan).

Similarly, under the CFDCPA, a collection agency is primarily defined as a person who engages in a business the principal purpose of which is the collection of debts (Colo. Rev. Stat. 12-14-103(2)(a)(I)), and does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" (Colo. Rev. Stat. 12-14-103(2)(b)(I)).  A "debt collector" is a person employed or engaged by a collection agency to perform the collection of debts owed or due."  Colo. Rev. Stat. ¶ 12-14-103(7).

Here, the evidence reflects that Defendant First National of Nebraska, Inc. is a bank primarily in the business of banking, and is a creditor of the credit card debt owed by the Plaintiff. Defendant O'Neill is employed by the bank and does not engage in the collection of debts for the bank. The Plaintiff does not dispute this evidence. Accordingly, the Court concludes that Plaintiff has failed to raise triable issues of fact as to whether Defendants are debt collectors or collection agencies as defined by the FDCPA and CFDCPA.

Furthermore, under the FDCPA, a "debt" is an obligation to pay money arising out of a transaction in which the money or services that are the subject of the transaction are primarily for personal, family or household purposes. 15 U.S.C. §1692a(5). Likewise, the CFDCPA provides that a "'debt' does not include a debt for business, investment, commercial or agricultural purposes or a debt incurred by a business." Colo. Rev. Stat. 12-14-103(6)(b).

Despite his allegations to the contrary, Plaintiff admitted on the record that the debt at issue here arises from business credit cards, presumably involving transactions that Plaintiff agreed and acknowledged would not be primarily for family, personal or household uses. The evidence reflects that the debt arises from three credit accounts all held in the name of Plaintiff's business, Denver West LLC. The Plaintiff does not dispute this evidence. Accordingly, the Court must conclude that Plaintiff fails to raise genuine issues of fact as to whether the challenged debt is protected by the FDCPA and the CFDCPA and, thus, recommends that the District Court **grant** the Defendant's motion for summary judgment and dismiss Claims One and Two.

## II.    Telephone Consumer Protection Act (TCPA)

The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

telephone dialing system or an artificial prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ....”  47 U.S.C. § 227(b)(1)(A)(iii).  The federal statute provides a private right of action to persons who have incurred monetary damages as a result of violations of the TCPA, and such actions may be brought in either state for federal court.  *Mims v. Arrow Fin. Servs., LLC*, -- U.S. --, 132 S. Ct. 740, 753 (2012).  “Thus, to establish a prima facie case under § 227(b)(1)(A), a plaintiff must show that: (1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient.”  *Harris v. World Fin. Network Nat’l Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012) (citation and internal quotations omitted).

Here, in addition to alleging that Defendants placed telephone calls to him in an attempt to collect a debt, Plaintiff alleges the Defendants “demonstrated willful or knowing non-compliance with 47 U.S.C. § 227(b)(1)(A) by using an automatic telephone dialing system to call the Plaintiff’s number, which is assigned to a cellular telephone service.”  Complaint, ¶ 73, docket #1.  Plaintiff also alleges he “has never given the defendants permission to call Plaintiffs [sic] cell phone.”  *Id.*, ¶ 78.

Defendants argue that Plaintiff has pled no facts alleging when or how many times Defendants used an automatic dialing system to call Plaintiff’s cellular telephone but, rather, “set forth threadbare elements of a TCPA claim supported by conclusory statements.”  Motion, docket #10 at 9.  Plaintiff responds by providing an “affidavit of facts” stating that, “in the spring of 2012,” he witnessed receiving calls from both First Bank of Omaha and First National Bank of Omaha “on both personal home phone and cellular phone.”  Response, docket #17 at 2.

The Court finds that Plaintiff’s “affidavit,” although executed by a “verification,” is neither

executed "under penalty of perjury" nor witnessed by a notary public and, therefore, may not be accepted as a sworn affidavit or declaration.  Specifically, 28 U.S.C. § 1746 states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

Because the Plaintiff's "affidavit of facts" is neither a sworn affidavit nor a declaration pursuant to 28 U.S.C. § 1746, the "facts" may not be accepted as evidence pursuant to Fed. R. Civ. P. 56(c) and the Court is constrained to consider only the facts set forth in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Nevertheless, the Court disagrees with Defendant that Plaintiff has failed to state a claim for violations of the TCPA.  Construing Plaintiff's Complaint liberally as I must and taking the allegations as true pursuant to Rule 12(b)(6), the Plaintiff alleges that in the year prior to filing the Complaint, Defendants placed telephone calls to him in an attempt to collect a debt, the Defendants used an automatic telephone dialing system to call his cellular telephone, and Plaintiff never gave the Defendants permission to call the Plaintiff's cellular telephone.  These allegations, if true, state a claim under the TCPA. *See Harris*, 867 F. Supp. 2d at 892.  Therefore, the Court recommends that

the District Court **deny** Defendants' motion to dismiss Claim Four.

## III.   Negligence

Plaintiff titles his Claim Three, "Respondeat Superior," but within the content of the claim, Plaintiff alleges that Defendant O'Neill was under the direct control or supervision of "Defendants" and was acting within the scope of his employment when Defendants allegedly "failed and/or neglected to properly train and supervise their employees, and especially its [sic] customer service employees, with respect to individual rights as protected by Federal law." Complaint, ¶¶61-67, 70, docket #1.

Colorado law recognizes the tort of "negligent supervision" where an employer "who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm may be directly liable to third parties for harm proximately caused by his conduct." *Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005) (quoting *Destafano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988)).  Thus, "to establish liability, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Id.* (citing *Moses v. Diocese of Colorado*, 863 P.2d 310, 329 (Colo. 1993)).

Here, the Court agrees with the Defendants that Plaintiff fails to state sufficient facts supporting a plausible claim of negligent supervision or training.  For example, the Plaintiff pleads no facts regarding the Bank's knowledge or constructive knowledge about any unreasonable risk of harm caused by any employee to the Plaintiff or to any other third party.  Without such factual support, the claim fails.  *See Van Osdol v. Vogt*, 892 P.2d 402, 409 (Colo. App. 1994) (there must be an indication that the defendant knew or should have known about the risk of harm to the

plaintiff).  Therefore, the Court recommends that the District Court **grant** Defendants' motion to dismiss Claim Three.

## IV.      Invasion of Privacy

Plaintiff's Claim Five is titled, "Invasion of Privacy by Intrusion Upon Seclusion."  Plaintiff alleges "[t]he conduct of the Defendant(s) in engaging in the illegal collection activities resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person."  Complaint, ¶ 83, docket #1.

In Colorado, "to prevail on a claim for intrusion upon seclusion as a violation of one's privacy, a plaintiff must show that another has intentionally intruded, physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person."  *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1065 (Colo. App. 1998), *cert. denied* (Colo. Mar. 1, 1999).  This tort can encompass conduct such as persistent and unwanted telephone calls.  *Quigley v. Rosenthal*, 327 F.3d 1044, 1073 (10th Cir. 2003) (citing *High-Tech Inst.*, 972 P.3d at 1067)).

Construing the Complaint liberally as I must and taking the allegations as true, the Court concludes the Plaintiff fails to state a plausible claim for intrusion upon seclusion.  Plaintiff alleges that in the year prior to the filing of the Complaint, Defendants made telephone calls to the Plaintiff in an attempt to collect a debt, but Plaintiff does not allege any facts demonstrating that the calls were either unwanted or persistent and, thus, there is no factual support for the claims' requirement that the "intrusion would be considered offensive by a reasonable person."  Accordingly, the Court recommends that the District Court **grant** Defendants' motion to dismiss Claim Five.

## V.      Leave to Amend

In the present motion, Defendants seek dismissal of Plaintiff's Complaint in its entirety, Claims One and Two pursuant to Rule 56 and Claims Three through Five pursuant to Rule 12(b)(6). Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10. The Court may dismiss "sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him to amend his complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).

Here, the Court recommends that Claims Three and Five be dismissed for failure to state sufficient facts to support a plausible claim for relief. The Plaintiff in this case is proceeding *pro se* and has not been previously granted leave to amend. Therefore, because it is possible the Plaintiff may cure the pleading deficiencies of these claims against the Defendants, the Court recommends that Plaintiff be allowed to file an Amended Complaint, consistent with Fed. R. Civ. P. 8 and 9(b) and other federal and local rules, within thirty (30) days of the District Court's Order. That is, the Plaintiff must identify the rights he believes were violated, the name of the person or entity which violated that right, exactly what that individual did or failed to do, how the action or inaction of that person or entity is connected to the violation of the Plaintiff's rights, and what specific injury Plaintiff suffered because of the other person's or entity's conduct. *See Ferrell v. Stumpf*, No. 10-1231-PHX-MHM, 2010 WL 3925133, at *2 (D. Ariz. Oct. 4, 2010) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). Any Amended Complaint should focus on facts from which the Court

can determine the harm each and every Defendant allegedly caused to Plaintiff and why Plaintiff is entitled to seek relief for the alleged harms in this Court. *Id.*

## CONCLUSION

Accordingly, the Court respectfully RECOMMENDS that the Motion to Dismiss filed by Defendants First National of Nebraska, Inc. and Daniel K. O'Neill [filed October 16, 2012; docket #10], which was converted in part to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d), be **GRANTED IN PART AND DENIED IN PART** as follows:

1.     Defendants' motion for summary judgment be granted and Plaintiff's Claims One and Two dismissed with prejudice;

2.     Defendants' motion to dismiss be denied as to Claim Four;

3.     Defendants' motion to dismiss be granted as to Claims Three and Five; and

4.     Plaintiff be granted leave to file an Amended Complaint within 30 days of the District Court's order, alleging Claims Three, Four and Five in accordance with this Recommendation.

Dated at Denver, Colorado, this 6th day of February, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

18